# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF GEORGIA

# (ATLANTA DIVISION)

-------------------------------------------------------------------------X

IN RE: OLYMPUS DUODENOSCOPE
PRODUCTS LIABILITY LITIGATION

CARYL QUASHIE,

        Plaintiff,

– Against –

OLYMPUS AMERICA INC.,
OLYMPUS CORPORATION OF THE AMERICAS,
OLYMPUS MEDICAL SYSTEMS CORPORATION, and
OLYMPUS CORPORATION


        Defendants
-------------------------------------------------------------------------X

COMPLAINT AND JURY DEMAND

CIVIL ACTION NO. _____

Plaintiff, by her attorneys, **CHILDERS, SCHLUETER, & SMITH, LLC** and **DOUGLAS & LONDON, P.C.**, upon information and belief, at all times hereinafter mentioned, allege as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to the Plaintiff exceeds $75,000.00, exclusive of interest and costs, and because Defendants are incorporated and have

their principal places of business in states other than the state in which the named Plaintiff resides.

## NATURE OF THE CASE

2. This action is brought on behalf of Plaintiff, CARYL QUASHIE, who underwent an endoscopic retrograde cholangiopancreatography (hereinafter referred to as "ERCP") procedure on or about August 7, 2015 in which an Olympus TJF-Q180V Duodenoscope (hereinafter referred to as "Q180V Scope") was used.

3. Defendants OLYMPUS AMERICA INC., OLYMPOUS CORPORATION OF THE AMERICAS, OLYMPUS MEDICAL SYSTEMS CORPORATION, and OLYMPUS CORPORATION (hereinafter collectively referred to as "Defendants") designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Q180V Scope.

4. Defendants concealed their extensive knowledge of the Q180V Scope's defects from Plaintiff and other patients, the United States Federal Drug Administration ("FDA"), the medical community, and the general public for several years.

5. The failure on the part of Defendants to make known the dangerous defects of the Q180V Scope to the above-listed parties while continuing to advertise,

promote, market, sell, and/or distribute the device demonstrated an unlawful and unethical indifference to the welfare and safety of the Plaintiff and other patients.

6. The willfully reckless and/or negligent actions of Defendants caused the Plaintiff to contract a life-threatening infection and, resultantly, to suffer significant pain, discomfort, emotional distress, and a diminished quality of life.

7. Consequently, the Plaintiff seeks redress from Defendants in the form of compensatory and punitive damages, as well as any other damages that the Court or jury may find appropriate.

## **PARTY PLAINTIFFS**

8. Plaintiff, CARYL QUASHIE, is a citizen of the United States of America and a resident of the State of Georgia.

9. Plaintiff, CARYL QUASHIE, was born on October 11, 1957.

10. Plaintiff, CARYL QUASHIE, underwent an ERCP procedure on or about August 7, 2015 at Emory Johns Creek Hospital in Johns Creek, GA, for which her physician used the Q180V Scope.

11. Due to the conduct of Defendants alleged herein, Plaintiff, CARYL QUASHIE, was caused to contract a life-threatening antibiotic-resistant infection through the aforementioned ERCP procedure.

12.  The above-stated infection caused Plaintiff, CARYL QUASHIE, to sustain severe personal injuries, pain, suffering, and emotional distress, as well as to incur substantial medical expenses.

**PARTY DEFENDANTS**

13. Upon information and belief, Defendant OLYMPUS AMERICA INC. (hereafter "OLYMPUS USA") is a corporation organized under the laws of New York, with a principal place of business at 3500 Corporate Parkway, Center Valley, Pennsylvania 18034. OLYMPUS USA serves as the headquarters for sales, advertising, promoting and marketing of medical products, among other goods and services, of OLYMPUS CORPORATION in the United States.

14. As part of its business, OLYMPUS USA is involved in the sales and marketing of medical instruments including the Q180V Scope.

15. Upon information and belief, Defendant OLYMPUS CORPORATION OF THE AMERICAS (hereafter "OLYMPUS AMERICAS") is a corporation organized under the laws of New York, with a principal place of business at 3500 Corporate Parkway, Center Valley, Pennsylvania 18034. OLYMPUS AMERICAS serves as the headquarters for OLYMPUS CORPORATION's operations in the United States, Canada, and Latin America.

16. As part of its business, OLYMPUS AMERICAS is involved in the research, development, sales, and marketing of medical instruments including the Q180V Scope.

17. Upon information and belief, Defendant OLYMPUS MEDICAL SYSTEMS CORPORATION (hereafter "OLYMPUS MEDICAL") is a corporation organized under the laws of Japan, with a principal place of business at Shinjuku Monolith, 2-3-1 Nishi-Shinjuku, Shinjuku-ku, Tokyo 163-0914, Japan.

18. As part of its business, OLYMPUS MEDICAL is involved in the design, manufacture, assembly, packaging and shipping of medical instruments including the Q180V Scope.

19. Upon information and belief, OLYMPUS CORPORATION is a corporation domiciled in Japan, with a principal place of business at Shinjuku Monolith, 2-3-1 Nishi-Shinjuku, Shinjuku-ku, Tokyo 163-0914, Japan.

20. As part of its business, OLYMPUS CORPORATION is involved in the research, development, sales, and marketing of medical instruments including the Q180V Scope.

21. Upon information and belief, OLYMPUS CORPORATION has approximately 70 percent of the global market for all gastrointestinal endoscopes and produces around 85 percent of duodenoscopes used in the United States.

22. Upon information and belief, Defendant OLYMPUS CORPORATION is the parent corporation of Defendants OLYMPUS USA, OLYMPUS AMERICAS, and OLYMPUS MEDICAL.

23. As previously stated, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Q180V Scope for the primary purpose of use in ERCP.

24. Upon information and belief, Defendants have transacted and conducted business in the State of Georgia.

25. Upon information and belief, Defendants have derived substantial revenue from goods and products used in the State of Georgia.

26. Upon information and belief, Defendants expected or reasonably should have expected their acts to have consequences within the United States and the State of Georgia, and derived substantial revenue from interstate commerce within the United States and the State of Georgia, more particularly.

## FACTUAL BACKGROUND

27. At all relevant times, Defendants were in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the Q180V Scope for the primary purpose of use in ERCP.

28. At all relevant times, Defendants' acts in the design, research, manufacture, testing, advertisement, promotion, marketing, sale, and distribution of the Q180V

Scope for the primary purpose of use in ERCP were negligent, willfully reckless, and/or fraudulent.

29. ERCP is a combination upper endoscopy and X-ray used to examine the pancreatic and bile ducts. Specifically, it is used to diagnose diseases in this area of the body, including problems with the liver, gallbladder, and pancreas, and/or to treat a narrowing or blockage of these ducts.

30. The medical instrument used in ERCP, known as a duodenoscope, is a long, flexible endoscope with a camera and light. It is fed through the patient's mouth, throat, and stomach into the duodenum so as to allow the physician to view and/or and access the above-listed parts of the body.

31. Defendants began marketing the Q180V Scope, the first "closed-channel" duodenoscope introduced into the global stream of commerce, in 2010.

32. "Closed-channel" refers to the duodenoscope's elevator wire channel, which allows the doctor to insert a guidewire and catheter into the patient's duodenum; closed-channel duodenoscopes seal off this channel, whereas earlier models, including Defendants' Q160V Scope, left it exposed.

33. The apparent goal of the "closed-channel" model is to prevent the duodenoscope's elevator channel from exposure to microbial contamination.

34. However, at all relevant times, the design and manufacture of the Q180V Scope's elevator channel sealing mechanism, called an "O-ring," was defective

and allowed for leakage of contaminants such as patient fluids and tissue into the channel.

35. As with earlier duodenoscope models, the Q180V Scope requires reprocessing, an intensive multi-step cleaning process, between uses so as not to spread contaminants between patients. Unlike the design of earlier duodenoscope models, however, the closed-channel design of the Q180V Scope impeded thorough sanitizing. At all relevant times, the design included several crevices too small to clean in the standard manner, but large enough to trap microbial contaminants.

36. Upon information and belief, defendants did not take reasonably adequate steps to test the efficacy of its reprocessing instructions for the Q180V Scope before introducing this instrument into the stream of commerce.

37. The standard reprocessing protocol for duodenoscopes including the Q180V Scope involved, at all relevant times, three steps: point-of-use processing (rinsing or wiping the device), thorough cleaning by a technician, and high level disinfection ("HLD").

38. At all relevant times, HLD of the Q180V Scope (and of most other endoscopes) was typically achieved through use of devices called Automated Endoscope Reprocessors ("AERs"), which kill microbes by flushing a chemical solution through the scope.

39. The above reprocessing protocol was explicitly prescribed to healthcare facilities in the Q180V Scope's manufacturer's instructions, though the protocol was insufficient to prevent the spread of infection from patient to patient. Thus, the Q180V Scope did not simply fail to protect patients from contamination better than earlier models; its faulty design put Plaintiff and other patients at unreasonable risk of contracting infection.

40. FDA was not initially aware of the Q180V Scope's harmful defects because Defendants failed to seek FDA approval for the closed-channel design of the instrument, based on the corporation's self-serving internal determination that it did not significantly differ from its previously approved model, the Q160V Scope.

41. For several years, Defendants also neglected to alert the medical community or the general public of the United States to the mounting evidence indicating that the Q180V Scope was, at all relevant times, unsafe and unfit for use.

42. By May 2012, Defendants were aware that the Q180V Scope could retain microbial contamination after reprocessing in the manner prescribed to healthcare facilities in the manufacturers' instructions.

43. By autumn of 2012, Defendants knew that the Q180V Scope was linked to outbreaks of dangerous antibiotic-resistant infections in both the United States and Europe.

44. By July 2013, Defendants were aware that its testing data regarding the Q180V Scope's reprocessing instructions was scientifically unsound and insufficient to prove the instructions effective.

45. Defendants clearly demonstrated their awareness of the abundant evidence against the safety of their Q180V Scope by sending safety alerts to European hospitals in 2013 and 2014.

46. However, Defendants failed to provide any warning or guidance to the medical community or to the general public of the United States indicating as such until February 2015, years after they learned of the Q180V Scope's dangerous defects.

47. In January 2016, it was reported that there were about 4,400 Q180V Scopes in use in hospitals and healthcare facilities across the United States. Defendants' actions endangered the health and welfare of countless patients at these facilities, demonstrating a reckless disregard for each of them, including Plaintiff, CARYL QUASHIE.

**FIRST CAUSE OF ACTION AS AGAINST THE DEFENDANTS**
**(NEGLIGENCE)**

48. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

49. Defendants' Q180V Scope was expected to, and did, reach the intended physicians and patients, including Plaintiff, CARYL QUASHIE, without substantial change to the condition in which it was manufactured, supplied, promoted, sold, and/or distributed by Defendants.

50. Defendants had a duty to exercise reasonable care in the design, research, manufacture, marketing, supply, promotion, sale, and/or distribution of the Q180V scope into the stream of commerce, including a duty to assure that the device would not leave patients vulnerable to infection and illness as a result of device contamination.

51. Defendants also had a duty to design, manufacture, market, supply, sell, and/or distribute an instrument like the Q180V Scope in such a way as to avoid harm to patients upon whom it was used, including Plaintiff, or to refrain from such activities upon the knowledge and/or constructive knowledge that such an instrument poses an unreasonable risk of harm to patients upon whom it is used.

52. Defendants failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of the Q180V Scope into interstate commerce in that Defendants knew or should have known that using the Q180V Scope created a high risk of unreasonable, dangerous side effects, including severe and personal injuries such as antibiotic-resistant infections, which may be lasting

in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of infection recurrence.

53. Defendants violated its above-listed duties in myriad ways, including but not limited to the following:

(a)    Manufacturing, producing, promoting, formulating, creating, and/or designing the Q180V Scope without thoroughly testing it;

(b)    Manufacturing, producing, promoting, formulating, creating, and/or designing the Q180V Scope without adequately testing it;

(c)    Not conducting sufficient testing programs to determine whether or not the Q180V Scope was safe for use; in that Defendants herein knew or should have known that the Q180V Scope was unsafe and unfit for use by reason of the dangers to its users;

(d)    Selling the Q180V Scope without making proper and sufficient tests to determine the dangers to its users;

(e)    Negligently failing to adequately and correctly warn the Plaintiff, the public, the medical and healthcare profession, and the FDA of the dangers of the Q180V Scope;

(f)    Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, the Q180V Scope;

(g)    Failing to test the Q180V Scope and/or failing to adequately, sufficiently and properly test the Q180V Scope.

(h)    Negligently advertising and recommending the use of the Q180V Scope without sufficient knowledge as to its dangerous propensities;

(i)     Negligently representing that the Q180V Scope was safe for use for its intended purpose, when, in fact, it was unsafe;

(j)     Negligently designing the Q180V Scope in a manner which was dangerous to its users;

(k)     Negligently manufacturing the Q180V Scope in a manner which was dangerous to its users;

(l)     Negligently producing the Q180V Scope in a manner which was dangerous to its users;

(m)    Negligently assembling the Q180V Scope in a manner which was dangerous to its users;

(n)     Concealing information concerning FDA warnings from the Plaintiff in knowing that the Q180V Scope was unsafe, dangerous, and/or non-conforming with FDA regulations;

(o)     Improperly concealing and/or misrepresenting information from the Plaintiff, healthcare professionals, and/or the FDA, concerning the severity of risks and dangers of the Q180V Scope

(p)     Failing to file a 510(k) submission with FDA to ensure appropriate screening of the Q180V Scope's closed-channel design before introducing the device into the stream of commerce;

(q)     Failing to respond promptly and adequately to testing indicating that the Q180V Scope was unsafe for use as directed in the manufacturers' instructions;

(r)     Failing to act promptly to revise the manufacturers' instructions upon learning of their deficiencies;

(s)     Failing to promptly adjust the design and manufacture of the Q180V Scope upon learning of its defects;

(t)     Marketing, supplying, promoting, selling, and/or distributing the Q180V Scope given their knowledge of its defects;

(u)     Concealing the defects of the Q180V Scope and the deficiencies of its instructions from FDA, the medical community, and the general public of the United States; and

(v)     Disregarding the safety and welfare of patients, including Plaintiff, by failing to withdraw the Q180V Scope from the

market, revise the device's reprocessing instructions, and/or restrict use of the device.

54. Despite the fact that Defendants knew or should have known that Q180V Scope caused unreasonably dangerous side effects, Defendants continued and continue to market, manufacture, distribute and/or sell Q180V Scope to consumers, including the Plaintiff.

55. Defendants knew or should have known that consumers such as the Plaintiff would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

56. Defendants' negligence was the proximate cause of Plaintiff's injuries, harm and economic loss which Plaintiff suffered and/or will continue to suffer.

57. As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including antibiotic-resistant infections, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

58. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and further alleges that

Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

59. By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## SECOND CAUSE OF ACTION AS AGAINST THE DEFENDANTS (STRICT PRODUCTS LIABILITY)

60. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

61. At all times herein mentioned, the Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have recently acquired the Defendants who have designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed the Q180V Scope as hereinabove described that was used in, the Plaintiff, CARYL QUASHIE,'s ERCP.

62. That the Q180V Scope was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

63. At those times, the Q180V Scope was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, the Plaintiff herein.

64. The Q180V Scope, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of the Q180V Scope.

65. The Q180V Scope, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective in design and/or formulation, in that, when it left the hands of the Defendants manufacturers and/or suppliers, it was unreasonably dangerous, and it was more dangerous than an ordinary consumer would expect.

66. At all times herein mentioned, the Q180V Scope was in a defective condition and unsafe, and Defendants knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by the Defendants.

67. Defendants knew, or should have known that at all times herein mentioned the Q180V Scope was in a defective condition, and was and is inherently dangerous and unsafe.

68. At the time of the Plaintiff's exposure to the Q180V Scope, the Q180V Scope was being used for the purposes and in a manner normally intended.

69. Defendants with this knowledge voluntarily designed the Q180V Scope in a dangerous condition for use by the public, and in particular the Plaintiff.

70. Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

71. Defendants created a product unreasonably dangerous for its normal, intended use.

72. The Q180V Scope, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was manufactured defectively in that the Q180V Scope left the hands of Defendants in a defective condition and was unreasonably dangerous to its intended users.

73. The Q180V Scope designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants reached their intended users in the same defective and unreasonably dangerous condition in which the Defendants' Q180V Scope was manufactured.

74. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which created an unreasonable risk to the health of consumers and to the Plaintiff in particular, and Defendants are therefore strictly liable for the injuries sustained by the Plaintiff.

75. The Plaintiff could not by the exercise of reasonable care, have discovered the Q180V Scope's defects herein mentioned and perceived its danger.

76. The Q180V Scope, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings or instructions as the Defendants knew or should have known that the product created a risk of serious and dangerous side effects including, antibiotic resistant infections, as well as other severe and personal injuries which are permanent and lasting in nature and the Defendants failed to adequately warn of said risk.

77. The Q180V Scope, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings and/or inadequate testing.

78. The Q180V Scope, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects including, antibiotic resistant infections, as well as other severe and permanent health consequences from the Q180V Scope, they failed to provide adequate warnings to users or consumers of the product, and continued to improperly advertise, market and/or promote their product, the Q180V Scope.

79. By reason of the foregoing, the Defendants have become strictly liable in tort to the Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of a defective product, the Q180V Scope.

80. Defendants' defective design, manufacturing defect, and inadequate warnings of the Q180V Scope were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

81. That said defects in Defendants' Q180V Scope were a substantial factor in causing Plaintiff's injuries.

82. Defendants' Q180V Scope was defective in design or formulation in that it was not reasonably fit, suitable, or safe for its intended purpose. Specifically, the design of Defendants' Q180V Scope caused it to trap contaminants and rendered it unreasonably difficult to effectively reprocess, which led to the spread of infections from one patient to the next.

83. Defendants' Q180V Scope, as designed, posed a substantial and evitable likelihood of harm, and it was possible to design such a product in a safer manner (such as that of earlier duodenoscope models).

84. Due to the aforesaid defective condition of the Q180V Scope used by Plaintiff's physician and to Plaintiff's resultant contraction of a life-threatening infection, Defendants are strictly liable to Plaintiff.

85. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

86. By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## THIRD CAUSE OF ACTION AS AGAINST THE DEFENDANTS
### (STRICT PRODUCTS LIABILITY—FAILURE TO WARN)

87. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

88. At all relevant times, Defendants had an ongoing duty to advise the medical community and the general public in a timely manner of risks associated with their Q180V Scope.

89. However, Defendants failed to fulfill the above-stated duty for several years after learning definitively of these risks.

90. Defendants' failure to promptly and adequately warn the medical community and general public of the United States of the risks associated with the Q180V Scope prevented Plaintiff, CARYL QUASHIE, and Plaintiff's physician from making an informed choice regarding use of this instrument in her procedure.

91. Defendants' failure to promptly and adequately warn the medical community of the risks associated with the Q180V Scope also prevented Plaintiff's hospital from making an informed choice regarding the purchase of this instrument, as well as regarding the reprocessing of the instrument.

92. Had Defendants promptly and adequately warned of the aforementioned risks, such warnings would have been heeded by Plaintiff's hospital, in that the hospital would have changed the manner in which it selected the Q180V Scope for use by its physicians, including but not limited to seeking safer duodenoscope models and/or reevaluating their reprocessing protocol for the Q180V Scope.

93. Had Defendants promptly and adequately warned of the aforementioned risks, such warnings would also have been heeded by Plaintiff's physician, in that they would have changed the manner in which they prescribed or selected the Q180V Scope for Plaintiff's ERCP, including but not limited to communicating the risks of the Q180V Scope to Plaintiff, not using the Q180V Scope, and/or seeking an alternative to Plaintiff's procedure.

94. Had Plaintiff been warned of the aforementioned risks, she would have sought alternate treatment that did not carry the risk of life-threatening infections, and thus would have avoided the aforesaid injuries.

95. Due to Defendants' above-described failure to warn Plaintiff and other relevant parties of the risks of their Q180V Scope and to Plaintiff's resultant injuries, Defendants are strictly liable to Plaintiff.

96. By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## FOURTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS (BREACH OF EXPRESS WARRANTY)

97. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

98. In the advertising and marketing of the Q180V Scope to hospitals, healthcare facilities, and physicians, Defendants expressly warranted that this instrument was safe for use as directed in its instructions.

99. The Q180V Scope does not conform to these express representations because the Q180V Scope is not safe and has numerous side effects, many of which were not accurately warned about by the Defendants. As a direct and proximate result of the breach of said warranties, Plaintiff, CARYL QUASHIE, suffered and/or will continue to suffer severe and permanent personal injuries, harm and economic loss.

100. This aforesaid warranty led hospitals, healthcare facilities, and physicians to purchase the Q180V Scope and use it for patients' procedures.

101. At all relevant times, Defendants were in breach of this aforesaid warranty in that use of the Q180V Scope in accordance with its instructions constituted a serious risk of harm to patients, including Plaintiff, who contracted the previously described infection as a result of exposure via this instrument.

102. Plaintiff did rely on the express warranties of the Defendants herein.

103. Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of the Defendants for use of the Q180V Scope.

104. As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including antibiotic resistant infection, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

105. By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## FIFTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS (BREACH OF IMPLIED WARRANTY)

106. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

107.     By manufacturing, marketing, supplying, promoting, selling, and/or distributing the Q180V Scope, Defendants impliedly warranted the product to be of merchantable quality, safe and fit for use as described in the product's instructions, and adequately tested to ensure its safety and quality.

108.     That said representations and warranties aforementioned were false, misleading, and inaccurate in that the Q180V Scope was unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

109.     At all relevant times, Plaintiff's physician and hospital used and reprocessed the Q180V Scope as directed and in the foreseeable manner normally intended, recommended, prescribed, instructed, and marketed by Defendants in reliance upon Defendants' implied warranty.

110.     At all relevant times, Defendants were in breach of implied warranty to Plaintiff, given that their Q180V Scope was not, in fact, of merchantable quality, safe and fit for use as described in the product's instructions, and adequately tested to ensure its safety and quality.

111.     Plaintiff and Plaintiff's physicians and healthcare professionals reasonably relied upon the skill and judgment of Defendants as to whether The Q180V Scope was of merchantable quality and safe and fit for its intended use.

112.     The Q180V Scope was injected into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition and the

products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

113. The Defendants herein breached the aforesaid implied warranties, as their drug The Q180V Scope was not fit for its intended purposes and uses.

114. As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including antibiotic resistant infections, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

115. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services

116. By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## SIXTH CAUSE OF ACTION AS
## AGAINST THE DEFENDANTS
## (FRAUDULENT MISREPRESENTATION)

116.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

117.   The Defendants falsely and fraudulently represented to the medical and healthcare community, and to the Plaintiff, and/or the FDA, and the public in general, that said product, the Q180V Scope, had been tested and was found to be safe and/or effective.

118.   That representations made by Defendants were, in fact, false.

119.   When said representations were made by Defendants, they knew those representations to be false and it willfully, wantonly and recklessly disregarded whether the representations were true.

120.   These representations were made by said Defendants with the intent of defrauding and deceiving the Plaintiff, CARYL QUASHIE, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, and/or use said product, the Q180V Scope, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiff herein.

121. At the time the aforesaid representations were made by the Defendants and, at the time the Plaintiff used the Q180V Scope, the Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

122. In reliance upon said representations, the Plaintiff was induced to and did use the Q180V Scope, thereby sustaining severe and permanent personal injuries, and/or being at an increased risk of sustaining severe and permanent personal injuries in the future.

123. Said Defendants knew and were aware or should have been aware that the Q180V Scope had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

124. Defendants knew or should have known that the Q180V Scope had a potential to, could, and would cause severe and grievous injury to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

125. Defendants brought the Q180V Scope to the market, and acted fraudulently, wantonly and maliciously to the detriment of the Plaintiff.

126. As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including antibiotic resistant infections, as well as other severe and personal injuries which are permanent and

lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of infection recurrence.

127.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.   Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

128.   By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

<u>**SEVENTH CAUSE OF ACTION AS**</u>
<u>**AGAINST THE DEFENDANTS**</u>
<u>**(FRAUDULENT CONCEALMENT)**</u>

129.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

130.   At all times during the course of dealing between Defendants and Plaintiff, CARYL QUASHIE, and/or Plaintiff's healthcare providers, and/or the FDA, Defendants misrepresented the safety of the Q180V Scope for its intended use.

131. Defendants knew or were reckless in not knowing that its representations were false.

132. In representations to Plaintiff, and/or Plaintiff's healthcare providers, and/or the FDA, Defendants fraudulently concealed and intentionally omitted the following material information:

(a) that the Q180V Scope was not as safe as other duodendoscopes;

(b) that the risks of adverse events with the Q180V Scope were higher than other duodendoscopes;

(c) that the risks of adverse events with the Q180V Scope were not adequately tested and/or known by Defendants;

(d) that Defendants were aware of dangers in the Q180V Scope, in addition to and above and beyond those associated with other duodendoscopes;

(e) that the Q180V Scope was defective, and that it caused dangerous side effects, including but not limited to antibiotic resistant infections, as well as other severe and permanent health consequences, in a much more and significant rate than other duodendoscopes;

(f) that the Q180V Scope was manufactured negligently;

(g) that the Q180V Scope was manufactured defectively;

(h) that the Q180V Scope was manufactured improperly;

(i) that the Q180V Scope was designed negligently;

(j) that the Q180V Scope was designed defectively; and

(k) that the Q180V Scope was designed improperly.

133. Defendants were under a duty to disclose to Plaintiff, and Plaintiff's physicians, hospitals, healthcare providers, and/or the FDA the defective nature of The Q180V Scope, including but not limited to the heightened risks of antibiotic resistant infections.

134. Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used The Q180V Scope, including the Plaintiff, in particular.

135. Defendants' concealment and omissions of material facts concerning, inter alia, the safety of the Q180V Scope was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff, and Plaintiff's physicians, hospitals and healthcare providers into reliance, continued use of the Q180V Scope, and actions thereon, and to cause them to purchase, prescribe, and/or dispense the Q180V Scope and/or use the product.

136. Defendants knew that Plaintiff, and Plaintiff's physicians, hospitals, healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding the Q180V Scope, as set forth herein.

137. Plaintiff, as well as Plaintiff's doctors, healthcare providers, and/or hospitals reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

138. As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including antibiotic resistant infections, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of infection recurrence.

139. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

140. By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## EIGHTH CAUSE OF ACTION AS
## AGAINST THE DEFENDANTS
## (NEGLIGENT MISREPRESENTATION)

141.   Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

142.   Defendants had a duty to represent to the medical and healthcare community, and to the Plaintiff, the FDA and the public in general that said product, the Q180V Scope, had been tested and found to be safe and effective.

143.   The representations made by Defendants were, in fact, false.

144.   Defendants failed to exercise ordinary care in the representation of the Q180V Scope, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution of said product into interstate commerce in that Defendants negligently misrepresented the Q180V Scope's high risk of unreasonable, dangerous side effects.

145.   Defendants breached their duty in representing the Q180V Scope's serious side effects to the medical and healthcare community, to the Plaintiff, the FDA and the public in general.

146.   As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including antibiotic resistant infections, as well as other severe and personal injuries which are permanent and

lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of infection recurrence.

147. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

148. By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

**NINTH CAUSE OF ACTION AS
AGAINST THE DEFENDANTS
(FRAUD AND DECEIT)**

149. Plaintiff repeats, reiterates, and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

150. Defendants conducted research and used the Q180V Scope as part of their research.

151. As a result of Defendants' research and testing, or lack thereof, Defendants blatantly and intentionally distributed false information, including but

not limited to assuring the public, the Plaintiff, CARYL QUASHIE, Plaintiff's doctors, hospitals, healthcare professionals, and/or the FDA that the Q180V Scope was safe and effective for use as a means of performing ERCP.

152. As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and research to the public, healthcare professionals, and/or the FDA, including the Plaintiff.

153. Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and the Plaintiff, as well as Plaintiff's respective healthcare providers and/or the FDA.

154. The information distributed to the public, the FDA, and the Plaintiff by Defendants, including but not limited to reports, press releases, advertising campaigns, print ads, magazine ads, and all other commercial media contained material representations of fact and/or omissions.

155. The information distributed to the public, the FDA, and the Plaintiff by Defendants intentionally included representations that Defendants' Q180V Scope was safe and effective for use than other duodenoscopes.

156. The information distributed to the public, the FDA, and the Plaintiff, by Defendants intentionally included representations that Defendants' Q180V Scope carried the same risks, hazards, and/or dangers as other duodenoscopes.

157. The information distributed to the public, the FDA, and the Plaintiff, by Defendants intentionally included false representations that the Q180V Scope was not injurious to the health and/or safety of its intended users.

158. The information distributed to the public, the FDA, and the Plaintiff, by Defendants intentionally included false representations that the Q180V Scope was as potentially injurious to the health and/or safety of its intended as other duodenoscopes.

159. These representations were all false and misleading.

160. Upon information and belief, Defendants intentionally suppressed, ignored and disregarded test results not favorable to the Defendants, and results that demonstrated that the Q180V Scope was not safe as other duodenoscopes.

161. Defendants intentionally made material representations to the FDA and the public, including the medical profession, and the Plaintiff, regarding the safety of the Q180V Scope, specifically but not limited to the Q180V Scope not having dangerous and serious health and/or safety concerns.

162. Defendants intentionally made material representations to the FDA and the public in general, including the medical profession, and the Plaintiff, regarding the safety of the Q180V Scope, specifically but not limited to the Q180V Scope being as safe as other duodenoscopes.

163. That it was the purpose of Defendants in making these representations to deceive and defraud the public, the FDA, and/or the Plaintiff, to gain the confidence of the public, healthcare professionals, the FDA, and/or the Plaintiff, to falsely ensure the quality and fitness for use of The Q180V Scope and induce the public, healthcare professionals, the FDA, and/or the Plaintiff to purchase, request, dispense, prescribe, recommend, and/or continue to use the Q180V Scope.

164. Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiff that the Q180V Scope was fit and safe for use as other duodenoscopes.

165. Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiff that the Q180V Scope was fit and safe for use other duodendoscopes and did not pose risks, dangers, or hazards above and beyond those identified and/or associated with other duodendoscopes.

166. That Defendants made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Plaintiff that the Q180V Scope did not present serious health and/or safety risks.

167. That Defendants made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Plaintiff

that the Q180V Scope did not present health and/or safety risks greater than other duodendoscopes.

168. That these representations and others made Defendants were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

169. That these representations and others, made by Defendants, were made with the intention of deceiving and defrauding the Plaintiff, including her respective healthcare professionals and/or the FDA, and were made in order to induce the Plaintiff and/or her respective healthcare professionals to rely upon misrepresentations and caused the Plaintiff to undergo ERCP with a Q180V Scope.

170. That Defendants, recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of the Q180V Scope to the public at large, the Plaintiff in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives, including other duodenoscopes.

171. That Defendants willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of the Q180V

Scope by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of the Q180V Scope.

172.   That Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations with the purpose and design of deceiving and lulling the Plaintiff, as well as her respective healthcare professionals into a sense of security so that Plaintiff would rely on the representations and purchase, use and rely on the Q180V Scope and/or that Plaintiff's respective healthcare providers would dispense, prescribe, and/or recommend the same.

173.   Defendants, through their public relations efforts, which included but were not limited to the public statements and press releases, knew or should have known that the public, including the Plaintiff, as well as Plaintiff's respective healthcare professionals  would rely upon the information being disseminated.

174.   That the Plaintiff and/or her respective healthcare professionals did in fact rely on and believe the Defendants' representations to be true at the time they were made and relied upon the representations as well as the superior knowledge of other duodenoscopes and were thereby induced to purchase, use and rely on Defendants' drug the Q180V Scope.

175. That at the time the representations were made, the Plaintiff and/or her respective healthcare providers did not know the truth with regard to the dangerous and serious health and/or safety concerns of the Q180V Scope.

176. That the Plaintiff did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could the Plaintiff with reasonable diligence have discovered the true facts.

177. That the Defendants' aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly and/or purposefully on the Plaintiff.

178. As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects including antibiotic resistant infections, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

179. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and further

alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

180. By reason of the foregoing, Plaintiff has been damaged as against the Defendants in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants on each of the above-referenced claims and Causes of Action and as follows:

1. For any other causes of action and/or claims as may be compensable under local laws and/or statutes as may apply under the laws in the jurisdiction and venue in which this case may be transferred for trial;

2. Awarding compensatory damages to Plaintiff for past and future damages, including but not limited to pain and suffering for severe injuries sustained by Plaintiff, health care costs, loss of wages and/or earning capacity, and medical monitoring, together with interest and costs as provided by law;

3. Punitive and/or exemplary damages for the intentional, wanton, willful, fraudulent, reckless, and/or grossly negligent acts of Defendants, who demonstrated a profound disregard and reckless indifference for the health and welfare of the general public and of the Plaintiff, in an amount sufficient to punish Defendants and deter future similar conduct;

4. Awarding Plaintiff reasonable attorneys' fees;

5.       Awarding Plaintiff the cost of these proceedings; and

6.       Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all issues.

Dated: August 15, 2017

**CHILDERS, SCHLUETER, & SMITH, LLC**

By: **/s/ M. Brandon Smith**
M. BRANDON SMITH, Esq.
GA Bar No. 141418
1932 N. Druid Hills Road, Suite 100
Atlanta, Georgia 30319
Ph: (404) 419-9500
Fax: (404) 419-9501
Email: BSmith@cssfirm.com

**DOUGLAS & LONDON, P.C.**

By: **/s/ Michael A. London**
MICHAEL A. LONDON (ML-7510)
*Pro hac vice pending*
59 Maiden Lane, 6th Floor
New York, NY 10038
Ph: (212) 566-7500
Fax: (212) 566-7501
Email: mlondon@douglasandlondon.com