# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

Caryl Quashie,

                Plaintiff,        Case No. 1:17-cv-03081

v.

                              Michael L. Brown
                              United States District Judge

Olympus America, Inc., et al.,

                Defendants.

_____/

## ORDER

Before the Court are Defendant Olympus Corporation's and Defendant Olympus Medical Systems Corporation's Motions to Dismiss for Lack of Personal Jurisdiction (Dkts. 27, 28) and all Defendants' Motions to Dismiss for Failure to State a Claim.[1] (Dkts. 29, 30, 31, 32).

## I. Background

Plaintiff Caryl Quashie is a resident of the State of Georgia. Dkt. 21 at ¶ 10. She alleges that she suffered a serious bacterial infection

---

[1] Defendants filed materially similar motions to dismiss the original complaint on the same grounds. *See* Dkts. 11, 12, 14, 16, 18, 19. The subsequent filing of the Amended Complaint rendered these motions moot. (Dkt. 21).

because of a defective medical instrument known as a duodenoscope that was used on her during a procedure at Emory Johns Creek Hospital in Johns Creek, Georgia. *Id.* at ¶¶ 11-12. Plaintiff filed her complaint against Olympus America Inc., Olympus Corporation of the Americas, Olympus Medical Systems Corporation, and Olympus Corporation claiming that each was responsible for the design, testing, manufacturing, marketing, sale, and distribution of the defective duodenoscope. *See id.* at ¶¶ 8-43. Defendants Olympus Medical Systems Corporation and Olympus Corporation – both incorporated and headquartered in Japan – move to dismiss for lack of personal jurisdiction. (Dkts. 27, 28). All Defendants move to dismiss the Amended Complaint for failure to state a claim. (Dkts. 29, 30, 31, 32).

The medical device at issue is the Olympus TJF-Q180V Duodenoscope, an endoscope equipped with a camera and light that a doctor can feed through a patient's mouth, throat, and stomach into the duodenum to view the patient's liver, gallbladder, pancreas, and bile ducts. Dkt. 21 at ¶¶ 1, 46-49. Duodenoscopes are reusable from patient to patient, but must be adequately cleaned to avoid infection. *Id.* at ¶¶ 49-50. Earlier versions of the Olympus duodenoscopes were designed

with an open channel into which the doctor inserted a guidewire and catheter.  *Id.* at ¶¶ 51-52.  Olympus enclosed this channel on the Q180V by using an O-ring that allegedly prevents the leakage of tissue and fluids into the channel.[2]  *Id.* at ¶¶ 52-57.  Plaintiff contends that Olympus used this design change to market, advertise, and promote the Q180V as safer, with a lower risk of microbial infection.  *See id.* at ¶¶ 55-56.

Plaintiff alleges that the closed-channel design was defective in several ways.  She claims, for example, that the O-ring allowed contaminants to leak into the channel.  *Id.* at ¶ 57.  She further claims that the design of the Q180V has crevices that are too small to clean or sanitize, but large enough to trap microbial contaminants.  *Id.* at ¶ 59.  Finally, Plaintiff claims that Defendants created a reprocessing protocol intended to clean the Q180V between uses that did not, in fact, clean the instrument to prevent the spread of infection from patient to patient.  *Id.* at ¶¶ 61-63.  Plaintiff alleges that, because of these defects, the Q180V

---

[2] As stated herein, the Amended Complaint does not adequately establish each Defendant's involvement in the design, manufacturing, marketing, and sale of the Q180V.  Instead, Plaintiff includes the same general allegation against each Defendant.  The Court refers to the Defendants collectively as "Olympus" for background purposes only.

put patients at an unreasonable increased risk of infection.  *See*, *e.g.*, *id*. at ¶ 64.

Plaintiff alleges that, by at least May 2012, Olympus knew the Q180V was defective and increased a patient's risk of infection.  *Id*. at ¶ 67.  And, by late 2012, Defendants knew that the Q180V was linked to outbreaks of antibiotic-resistant infections in the United States and Europe.  *Id*. at ¶ 68.  According to Plaintiff, the FDA eventually became aware of the risks posed by the Q180V and required Defendants to fix the defects and modify the reprocessing protocol.  *Id*. at ¶ 70.  Defendants did so.  *Id*.

Plaintiff underwent a medical procedure at the Johns Creek hospital on August 7, 2015, during which the doctor allegedly used a Q180V scope. *Id*. at ¶ 12.  Seventeen days later, Plaintiff was hospitalized.  She was hospitalized again just three days later, this time diagnosed with an antibiotic-resistant infection.  *Id*. at ¶ 13.  Plaintiff claims she got the life-threatening infection from the Q180V that was used during her procedure.  *Id*.  Plaintiff asserts claims of (1) negligence (*id*. at ¶¶ 74-87); (2) strict products liability (*id*. at ¶¶ 88-120); (3) failure to warn (*id*. at ¶¶ 121-136);  (4)  fraudulent  misrepresentation  (*id*. at  ¶¶  137-153);  (5)

4

fraudulent concealment (*id*. at ¶¶ 154-169); (6) negligent misrepresentation (*id*. at ¶¶ 170-181); and (7) fraud and deceit (*id*. at ¶¶ 182-214).

Plaintiff filed her Complaint on August 15, 2017 and an Amended Complaint on September 19, 2017. (Dkts. 1, 21). Defendant Olympus Corporation and Olympus Medical Systems Corporation (hereinafter "Olympus Corp." and "OMSC," respectively) filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(2), arguing that they are not subject to personal jurisdiction in this Court. (Dkts. 27, 28). These Defendants – as well as the other two Olympus defendants – also filed motions to dismiss under Fed. R. Civ. P. 12(b)(6). (Dkts. 29, 30, 31, 32). Briefing is now complete and, following oral argument, the Court finds the matter is ripe for resolution.

## II.   Analysis

### A.   Motions to Dismiss for Lack of Jurisdiction

This is a diversity case. Before a federal court sitting in such a case can exercise personal jurisdiction over a non-resident defendant, the Court must determine that it has jurisdiction under (1) the long-arm statute of the state in which it sits and (2) the Due Process Clause of the

United States Constitution. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting *United Techs. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). If a defendant does not challenge the complaint's jurisdictional allegations through affidavit evidence, the Court "accepts the allegations in the complaint as true for purposes of resolving the jurisdictional issue." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999). In assessing jurisdiction, the Court must draw all reasonable inferences in the plaintiff's favor. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).

### i. *Jurisdiction Under Georgia's Long Arm Statute*

Georgia's long-arm statute provides, in relevant part:

> A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
>
> (1) Transacts any business within this state;

6

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;

(3) Commits a injury in this state caused by an act or omission outside this state if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered within this state . . .

O.C.G.A. § 9-10-91.   Georgia law governs the breadth and application of its long-arm statute. *Diamond Crystal Brands, Inc.*, 593 F.3d at 1258.  As a result, when applying the Georgia long-arm statute, this Court must construe it as the Georgia Supreme Court would.  *Id.*  Jurisdiction under the Georgia long-arm statute is not "coextensive with procedural due process." *Id.*  Instead, the state statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of due process."  *Id.* at 1259.

Here, Plaintiff has alleged that the Japanese Defendants – Olympus Corp. and OMSC – have "transacted and conducted business in the State of Georgia" and have "derived substantial revenue from goods and products used in the State of Georgia."  Dkt. 21 at ¶¶ 32, 33, 39, 40. Plaintiff also alleges that these two defendants are in the "business of creating, designing, researching, testing, manufacturing, labeling,

advertising, marketing, promoting, selling and distributing medical equipment, including but not limited to duodenoscopes and the subject Q180V Scopes, into the stream of commerce for use by the public, including the Plaintiff." *Id.* at ¶¶ 31, 38. Finally, Plaintiff alleges that Olympus Corp and OMSC "expected or should have expected [their] acts to have consequences within the State of Georgia and derive[] substantial revenue from interstate commerce within the United States of America, and the State of Georgia, more particularly." *Id.* at ¶¶ 34, 41.

As a threshold matter, the Court notes that Plaintiff's Amended Complaint does not contain allegations tailored to each defendant or that set forth each defendant's individual actions that allegedly give rise to personal jurisdiction.[3] Instead, she makes the very same allegations

---

[3] Plaintiff alleges that "[a]t all times mentioned, each Defendant was the representative, agent, employee, joint venture, or alter ego of each of the other Defendants and in doing all things alleged herein was acting within the scope of its authority as such." Dkt. 21 at ¶ 42. This conclusory allegation is insufficient to attribute conduct of Olympus America Inc. or Olympus Corporation of the Americas to Olympus Corp. or OMSC so as to establish personal jurisdiction. *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1304 (N.D. Ga. 2005) ("In order to exercise personal jurisdiction over a parent company by virtue of [its] subsidiary's activities within or affecting the forum state, the parent must have exercised an unusually high degree of control over the subsidiary.") At the hearing on Defendants' motions to dismiss, Plaintiff conceded that she does not allege this degree of control. Dkt. 65 at 40:3-14 .

against both Olympus Corp. and OMSC. *See id.* at ¶¶ 30-41. Thereafter, Plaintiff refers only to "Defendants" or "each and every Defendant," without any effort to distinguish between the Olympus entities.

In *Brazil v. Janssen Research & Dev. LLC*, 249 F. Supp. 3d 1321, 1331 (N.D. Ga. 2016), this Court found that the plaintiff failed to make a prima facie showing of jurisdiction because she did not allege facts specific to each defendant sufficient to show jurisdiction. In *Brazil*, however, the jurisdictional allegations merely referred to "Defendants" as a single entity, with no allegation that each defendant engaged in specific conduct. The defendant challenging personal jurisdiction in *Brazil* also submitted evidence contradicting the plaintiff's allegation that it manufactured and sold the product at issue within the forum, specifically its Form 10-K, which proved that the defendant was a holding company without manufacturing or sales operations. *Brazil*, 249 F. Supp. 3d at 1331. The Court, therefore, was not obligated to accept the plaintiff's jurisdictional allegations as true.

In this case, Plaintiff has included jurisdictional allegations against each defendant – they are verbatim, but they allege specific conduct by each defendant. *See, e.g.*, Dkt. 21 at ¶¶ 18-41. And neither Olympus Corp.

nor OMSC submitted an affidavit challenging Plaintiff's jurisdictional allegations.  Thus, the Court must accept Plaintiff's allegations, including the allegation that both Olympus Corp. and OMSC engaged in the same scope of conduct.

Plaintiff's allegations in the Amended Complaint establish jurisdiction under the third section of Georgia's long-arm statute.[4] Plaintiff alleges that Olympus Corp. and OMSC committed an injury in Georgia (specifically, the injury to Plaintiff) caused by acts outside of Georgia (specifically the defective creation, design, manufacturing, and promotion of the Q180V scope that they put into the stream of commerce for use by Plaintiff and others), that Defendants expected their acts to have consequences with the State of Georgia, and that these Defendants "derived substantial revenue from products used in the State of Georgia."

---

[4] Plaintiff alleges that Olympus Corp. and OMSC have "transacted and conducted business in the State of Georgia," which at first blush seems to satisfy section one of Georgia's long-arm statute.  Dkt. 21 at ¶¶ 32, 29. But in *Diamond Crystal*, the Eleventh Circuit noted that the cause of action must "arise out of" the business transacted or conducted in Georgia. *Diamond Crystal Brands, Inc.*, 593 F.3d at 1264.  As discussed in more detail *infra*, Plaintiff does not sufficiently allege that her cause of action is related to the business conducted or transacted in Georgia by OMSC or Olympus Corp.

*Id.* at ¶¶ 31-41.  These allegations track the requirements of section three of Georgia's long-arm statute.

Defendants Olympus Corp. and OMSC argue that these bare-bones allegations are nevertheless insufficient to support jurisdiction and that Plaintiff must provide more factual details.  Dkts. 27-1 at 9-13; 28-1 at 9-13.  That is not correct.  There is no requirement that a plaintiff plead more than the bare minimum required by the long-arm statute.  For example, in *Bentancourt v. Endo Pharmaceuticals, Inc.*, Case No. 1:11-cv-3805, 2014 WL 10677480, at *2-5 (N.D. Ga. Dec. 17, 2014), the plaintiff alleged that she was injured in Georgia as a result of defective birth-control products that Defendants manufactured outside of Georgia but placed in the stream of commerce (foreseeably leading to Georgia), that the defective pills were used in Georgia, and that Defendants were unjustly enriched as a result of the money they earned from the sale of the pills.  *Id.* at *3.  The Court found these allegations sufficient to satisfy Georgia's long-arm statute without additional details.  *Id.*  As explained above, Plaintiff in this case has advanced nearly identical allegations.  Plaintiff, therefore, has made a prima facie case for personal jurisdiction under the Georgia long-arm statute.

11

### ii.   *Personal Jurisdiction Under the Due Process Clause*

Having determined that personal jurisdiction exists under Georgia law, the Court must now consider whether Plaintiff's jurisdictional allegations satisfy due process requirements for personal jurisdiction. "The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments imposed by foreign sovereigns." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1267. "The heart of this protection is fair warning—the Due Process Clause requires 'that the defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there.'" *Id.* (alteration in original) (internal quotations and citations omitted).

Courts have recognized two types of jurisdiction under the Due Process Clause: "general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  General jurisdiction typically arises from contacts with the forum states that are unrelated to the litigation.  To satisfy due process, such contacts must be "so continuous and systematic as to render [the defendant] essentially at home in the forum State." *Id.*; *Borg–Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055,

12

1057 (11th Cir. 1986).  "Specific jurisdiction on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Goodyear*, 564 U.S. at 919  (internal quotations and alterations omitted).

The allegations in the Amended Complaint do not come anywhere close to establishing general jurisdiction over Olympus Corp. or OMSC. Plaintiff's allegations that Olympus Corp. and OMSC placed products into the stream of commerce that brought them to Georgia "may bolster an affiliation germane to *specific* jurisdiction [but] . . .  do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant."  *Daimler AG v. Bauman*, 571 U.S. 117, 132 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915 (2011)) (emphasis in original).   Furthermore, Plaintiff has not demonstrated that the business these defendants allegedly conducted in Georgia was sufficiently continuous and systematic so as to render the Defendants at home in Georgia.  *Id.*  Indeed, at oral argument, Plaintiff conceded that her allegations were insufficient to establish general jurisdiction over Olympus Corp. and OMSC.  Dkt. 65 at 31:6-11.

To remain in court, therefore, Plaintiff must establish specific jurisdiction.  "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations and citations omitted).   "Put differently, the defendant must have purposefully availed itself of the privilege of conducting activities – that is, purposefully establishing contacts – in the forum state and there must be a sufficient nexus between those contacts and the litigation."  *Diamond Crystal Brands, Inc.*, 593 F.3d at 1267.

Plaintiff claims her allegations that Defendants transacted business in Georgia, derived revenue from that business, and committed a tortious act that affected a Georgia resident and caused injury in Georgia are sufficient to support specific jurisdiction.  *See* Dkt. 41 at 19.  At most, these allegations establish some contacts with Georgia.  They are, however, insufficient to show "a sufficient nexus between those contacts and the litigation."  *Diamond Crystal Brands, Inc.*, 593 F.3d at 1267.

14

Notably, Plaintiff does not allege that Defendants' contacts are related to the cause of action such that Olympus Corp. and OMSC should have anticipated being haled into Court here.  Without a nexus between the forum contacts and the conduct giving rise to the cause of action, specific jurisdiction is lacking.  *See id.* ("in specific jurisdiction cases, the 'fair warning' requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities") (citing *Burger King*, 471 U.S. at 471-72); *see also Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (finding that for specific jurisdiction, the defendant's contact with the forum "must be a 'but-for' cause of the tort.").

To remedy this defect in the Amended Complaint, Plaintiff alleges in response to Defendants' motions to dismiss that "Defendants purposefully availed themselves of this forum when they marketed, distributed and sold medical equipment to hospitals in Georgia, including the hospital where the Q180V scope was used." Dkt. 41 at 19.  Plaintiff argues that this allegation establishes specific jurisdiction.  *Id.*  Whether it does is immaterial because the Amended Complaint does not – in fact – include this allegation.  Plaintiff does not allege anywhere in the Amended

Complaint that Olympus Corp. or OMSC sold medical equipment to Georgia hospitals, let alone that they sold the scope at issue to the hospital at which Plaintiff underwent her surgery.   Rather, the Amended Complaint alleges that the Defendants placed the scope "into the stream of commerce for use by the public, including the Plaintiff" and that Defendants "expected or should have expected [their] acts to have consequences in Georgia."  Dkt. 21 at ¶¶ 31, 34, 38, 41.

But Plaintiff's allegations are insufficient to establish specific personal jurisdiction under a stream-of-commerce theory.  In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), the Supreme Court held that the Due Process Clause permits jurisdiction over a foreign manufacturer if it "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."  *World-Wide Volkswagen Corp.*, 444 U.S. at 298.  A defendant's expectation that the product will reach the forum state is necessary because it satisfies the core due process requirement that a Defendant "reasonably anticipate being haled into court" in the forum state.  *Id.* at 297.

Since *World-Wide Volkswagen*, pluralities of the Supreme Court have articulated more demanding steam-of-commerce theories. In *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102 (1987), Justice O'Connor – writing for herself and three other Justices – reasoned that jurisdiction under a stream-of-commerce theory would only be appropriate where "[a]dditional conduct of the defendant . . . indicate[s] an intent or purpose to serve the market in the forum state." *Asahi*, 480 U.S. at 112. Courts refer to this as the "stream of commerce plus" test. *See Bentancourt*, 2014 WL 10677480, at *6 (noting that the Eleventh Circuit has not expressly adopted the "stream of commerce plus" test).

Most recently, in *J. McIntyre Machinery Ltd. v. Nicastro*, 564 U.S. 873 (2011), the Supreme Court found jurisdiction lacking on allegations similar to those in this case – albeit in the absence of a majority opinion.[5] In *Nicastro*, the plaintiff brought product-liability claims in New Jersey state court against the foreign manufacturer of a scrap-metal processing machine. The New Jersey Supreme Court held its courts had personal

---

[5] Courts have noted the difficulty in discerning a holding from the *Nicastro* plurality opinions. *See Johnson v. Chrysler Canada Inc.*, 24 F. Supp. 3d 1118, 1133-40- (N.D. Ala. 2014). It is clear, however, that on the facts presented there, a majority of the Court found personal jurisdiction lacking.

jurisdiction over the foreign manufacturer because the manufacturer placed its machines in the stream of commerce knowing that the machines might end up in New Jersey – nearly the exact allegation Plaintiff makes in this case.  In the plurality opinion, four Justices agreed that merely placing goods into the stream of commerce with the knowledge that the goods may end up in the forum state does not constitute purposeful availment so as to establish personal jurisdiction:

> [t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State.

*Id.* at 881.  In a concurring opinion, two more Justices also rejected the idea that "a [foreign] producer is subject to jurisdiction for a product-liability action so long as it knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states." *Id.* at 891 (Bryer, J., Alito, J., concurring) (internal quotations omitted).

The Court need not parse these different tests, however, because Plaintiff does not satisfy even the most permissive stream-of-commerce test articulated in *World-Wide Volkswagen*.  That is, Plaintiff fails to

allege facts sufficient to show that Defendants Olympus Corp. or OMSC expected their products to be purchased by consumers in Georgia such that they "manifest[ed] an intention to submit to the power of a sovereign." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Plaintiff's allegations that Defendants Olympus Corp. and OMSC "expected or should have expected [their] acts to have consequences within the State of Georgia" are not enough. Dkt. 21 at ¶¶ 34, 41. Which acts? What consequences? Plaintiff's allegations fail to establish the necessary requirement that Defendants placed the Q180V into the stream of commerce with the expectation that the product would be purchased by consumers in Georgia, not just that the product could have some ill-defined consequence in Georgia.

For the reasons set forth above, the exercise of personal jurisdiction over Olympus Corp. or OMSC would violate the Due Process Clause. *Id.* at 881. Because the Court concludes that it has no personal jurisdiction over these Defendants, their motions to dismiss for lack of personal jurisdiction are granted. (Dkts. 27, 28). The Court grants Plaintiff leave to amend her complaint so as to properly establish personal jurisdiction if it exists.

19

## B.   Motions to Dismiss for Failure to State a Claim

All four Defendants moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) for failure to state a claim.  (Dkts. 29, 30, 31, 32).  Because the Court grants Olympus Corp. and OMSC's motions to dismiss for lack of personal jurisdiction (Dkts. 27, 28), their motions to dismiss for failure to state a claim are moot.[6]  (Dkts. 29, 30).  Defendants Olympus America Inc. and Olympus Corporation of the Americas contend that dismissal of Plaintiff's claims is appropriate because (1) Plaintiff's claims are barred by the statute of limitations; (2) Plaintiff's fraud claims fail to meet the heightened pleading standard set forth in Fed. R. Civ. P. 9(b); and (3) Plaintiff failed to adequately plead her negligence and strict liability claims.  *See* Dkts. 29, 30, 31, 32.  The Court will address each ground, in turn.

### i.   *Statute of Limitations*

Plaintiff underwent surgery with the allegedly defective scope on August 7, 2015.  Dkt. 21 at ¶ 12.  Seventeen days after the surgery, on

---

[6] Defendant Olympus Corp. and OMSC's filing of separate Rule 12(b)(1) and Rule 12(b)(6) motions may be inappropriate under Rule 12(g)(2). Because the Rule 12(b)(6) motions are moot, however, the Court need not reach this question.

August 24, 2015, she was hospitalized. *Id*. at ¶ 13. She was hospitalized again three days later, at which time she was diagnosed with an antibiotic-resistant infection. *Id*. Plaintiff filed this action on August 15, 2017. (Dkt. 1). Defendants argue that Plaintiff's claims are time-barred because her claims accrued on August 7, 2015, the date of her surgery, thus requiring any claims to have been filed by August 7, 2017. Defendants, therefore, move to dismiss the Amended Complaint as barred by the two-year statute of limitations.

Under Georgia law, "[a]ctions for injury to the person shall be brought two years after the right of action accrues." O.C.G.A. § 9-3-33. And "on a tort claim for personal injury the statute of limitation generally begins to run at the time damage caused by the tortious act occurs, at which time the tort is complete." *Everhart v. Rich's Inc.*, 194 S.E. 2d 425, 428 (Ga. 1972). The "true test to determine when a cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result. *Jankowski v. Taylor, Bishop & Lee*, 273 S.E. 2d 16, 18 (Ga. 1980).

Plaintiff's claims are not time-barred.  Her claims accrued – not on the day of her surgery – but rather on August 24, 2015, when she became ill and was hospitalized.  Before that time, Plaintiff neither suffered any injury nor knew that she had suffered any injury.  It would be impossible for plaintiff to have "maintained [her] action to a successful result" on the day of her surgery before she suffered any infection or knew that she had suffered such an infection.  *See Crook-Petite-El v. Bumble Bee Foods LLC*, Case No. 1:17-cv-00677, 2017 WL 3495924, at *3 (N.D. Ga. June 2, 2017) (cause of action arose on date became ill from eating allegedly tainted food, not the date of consumption).  Plaintiff timely filed her claim.

### ii.    *Fraud Claims*

Defendants also move to dismiss Plaintiff's fraud-related claims, arguing that Plaintiff failed to plead these claims with the particularity required by Fed. R. Civ. P. 9(b).  Rule 9(b) requires that a party alleging fraud or mistake "state with particularity the circumstances constituting fraud or mistake."  Four of Plaintiff's claims are subject to Rule 9(b)'s heightened pleading standard: (1) fraudulent misrepresentation; (2)

fraudulent concealment; (3) negligent misrepresentation; and (4) fraud and deceit.[7]

To plead a fraud claim with sufficient particularity, a party must "plead facts as to time, place, place, substance of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." *Brazil*, 249 F. Supp. 3d at 1339 (quoting *Jenkins v. BAC Loan Servicing LP*, 822 F. Supp. 2d 1369, 1380 (M.D. Ga. 2011)).   This is often expressed as the need to plead the who, what, when, where and how of the alleged fraud. *Id.*  When a plaintiff asserts fraud claims against multiple defendants, the plaintiff must satisfy Rule 9(b) as to each defendant.  A blanket allegation that "defendants made misrepresentations" without any further specificity as to each defendant is insufficient.  To survive a motion to dismiss, "a plaintiff claiming fraud must appraise each defendant of the scope of his or her participation in the alleged fraud." *Brazil*, 249 F. Supp. 3d at 1339.   "[G]eneralized allegations lumping multiple defendants together are insufficient." *Id.* (citing *W. Coast. Roofing & Waterproofing, Inc., v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008)).

---

[7] Rule 9(b)'s heightened pleading requirement applies to claims for negligent misrepresentation.  *Intellicig USA LLC v. CN Creative Ltd.*, Case No. 1:15-cv-01832, 2016 WL 5402242, at *8 (N.D. Ga. July 13, 2016).

Here, Plaintiff has failed to satisfy Rule 9(b) because her claims both lack sufficient particularity and fail to distinguish between the individual defendants.   In her fraudulent misrepresentation claim, for example, Plaintiff repeatedly alleges that "each and Defendant falsely and fraudulently represented to the medical and healthcare community" various aspects of the Q180V scope.   *See, e.g.*, Dkt. 21 at ¶¶ 138-44.   She claims that these misrepresentations were made "by means of media advertisements, internet advertisements, press releases, sales literature, advertising campaigns, print ads, magazine ads, and/or commercial media . . ."   *Id.* at ¶ 142.   Plaintiff does not identify a single statement with specificity – that is, by identifying the time and date of the statement, the specific place of the statement, the defendant who made the statement, or the precise details of the statement.   Simply referring to the Defendants' advertisements over an undefined period does not provide the who, what, when, where, and how required by Rule 9(b).   In addition, Plaintiff's fraudulent misrepresentation claims do not distinguish in any way between the four defendants, instead lumping them all together in a collective allegation.

The same is true of Plaintiff's other fraud-based claims. Her fraudulent concealment claim amounts to a generalized allegation that "each and every Defendant fraudulently concealed and intentionally omitted" information about the dangers of the scope. *See, e.g.*, Dkt. 21 at ¶¶ 157-62. Again, she alleges that the Defendants failed to make the necessary disclosures in "media advertisements, internet advertisements, press releases, sales literature, advertising campaigns, print ads, magazine ads, and or commercial media . . ." *Id.* at ¶ 157. She does not identify any specific statement as to the alleged speaker, the time, the location, or the details of the statement. In addition, Plaintiff makes no attempt to distinguish between the individual defendants. Her negligent misrepresentation and fraud and deceit claims contain the same general allegations of conduct by "each and every Defendant" in unidentified press releases, advertising campaigns, print ads, and other media. *See, e.g.*, *id.* at ¶¶ 171-77; 183-94.

None of these claims satisfy Rule 9(b)'s particularity requirement. The Court dismisses Plaintiff's claims for fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and fraud and deceit without prejudice and with leave to amend.

25

### iii.   *Negligence, Strict Liability and Failure to Warn Claims*

Finally, Defendants move to dismiss Plaintiff's negligence, strict-liability, and failure to warn claims.  Defendants contend that Plaintiff has failed to plausibly plead these claims under Georgia law.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Bryant v. Avado Brands, Inc.*, 187, F.3d 1271, 1273 n.1 (11th Cir. 1999).

Plaintiff's negligence, failure to warn, and strict liability claims suffer from the same a lack of specificity as to each Defendant that dooms her fraud claims.  *Brazil*, 249 F. Supp. 3d at 1338.  Because Plaintiff refers only to Defendants as a group, it is impossible to discern from the face of the Amended Complaint which Defendant allegedly breached what duty or committed what tortious act.  Plaintiff's lack of specificity "fails to provide proper notice of her claims to any one Defendant."  *Id*. at 1339.

Under Georgia law, the role a defendant plays in the production, sale, or distribution of a product affects the applicable legal standard. Different duties, for example, apply to manufacturers, distributors, and sellers when proceeding under a negligent failure-to-warn theory. *Askew v. DC Medical, LLC*, Case No. 1:11-cv-1245, 2011 WL 1811433, at *4 (N.D. Ga. May 12, 2011). Because Plaintiff has not alleged each Defendant's role in the manufacturing, marketing, or sales of the scope at issue, each defendant is denied notice of the duty to warn that it allegedly owes. Likewise, strict-liability claims may proceed only against the manufacturer of a product. *See, e.g.*, *Andrews v. Autoliv Japan, Ltd.*, 715 F. App'x 965 (11th Cir. 2018). Although Plaintiff insisted at the hearing that all Defendants here are somehow involved in the manufacturing, production, and sale of the Q180V, the Amended Complaint contains no specific facts to support this assertion.[8] This general pleading prevents

---

[8] Defendants cite three cases in support of their argument that Plaintiff has not sufficiently plead causation: *Barnes v. AstraZeneca Pharmaceuticals LP*, 253 F. Supp. 3d 1168 (N.D. Ga. 2017); *Thornton v. AstraZeneca Pharmaceuticals LP*, Case No. 1:17-cv-653, 2017 WL 2255776 (N.D. Ga. May 15, 2017); and *Nassar Cure v. Intuitive Surgical*, Inc., Case No. 1:16-cv-1948, 2017 WL 498727 (N.D. Ga. Jan. 31, 2017). Those cases are clearly distinguishable. Most importantly, in those cases, the plaintiffs failed to allege facts showing *how* the defendants' products were defective or caused their injuries. In contrast, Plaintiff alleges that

the Defendants from knowing which one or which ones Plaintiff alleges to have manufactured a defective product.

Plaintiff's lack of specificity with respect to the acts of each Defendant "fails to provide proper notice of her claims to any one Defendant." *Brazil*, 249 F. Supp. 3d at 1339.   Thus, the Court grants Defendants' motions to dismiss the negligence, failure to warn, and strict liability claims and will allow Plaintiff leave to amend.

## III.    Conclusion

For the reasons set forth above, the Court **GRANTS** Defendant Olympus Corporation and Defendant Olympus Medical Systems Corporation's Motions to Dismiss for Lack of Personal Jurisdiction (Dkts. 27, 28) and **DISMISSES WITHOUT PREJUDICE** Defendant Olympus Corporation and Defendant Olympus Medical Systems Corporation.  The

---

the closed-channel design and the O-ring "allowed for leakage of contaminants such as patient fluids and tissue into the channel," that the closed-channel design "impeded thorough cleansing and sanitizing," and that "the design of the Q180V included several crevices too small to clean or sanitize . . . but large enough to trap microbial contaminants and cause the spread of infection."  Dkt. 21 at ¶¶ 57-59.  Because Plaintiff alleges that she was injured not just by some unidentified problem with the Q180V, but by the Q180V's defects as pled in the Amended Complaint, she has adequately pled causation.

Court further **GRANTS** the remaining Defendants' Motions to Dismiss for Failure to State a Claim. (Dkts. 31, 32). Defendant Olympus Corporation and Defendant Olympus Medical Systems Corporation's Motions to Dismiss for Failure to State a Claim (Dkts. 29, 30) are **DENIED AS MOOT.** The Court further **ORDERS** Plaintiff to file an Amended Complaint, if any, **WITHIN TWENTY-ONE (21) DAYS OF THE DATE OF THIS ORDER**.

**IT IS SO ORDERED.**

Dated: June 19, 2018
Atlanta, Georgia

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE